

United States District Court
District of Massachusetts

UNITED STATES OF AMERICA   )
                           )   Case No. 21-cr-10065-ADB
v.                         )
                           )
                           )
MASSIMO MARENGHI           )
        Defendant,         )

**DEFENDANT'S MOTION AND MEMORANDUM TO DISMISS FOR WANT OF JURISDICTION**

The Defendant Massimo Marenghi hereby files a motion to dismiss count 1 of the indictment with prejudice for want of jurisdiction, pursuant to Fed. R. Crim. P. Rule 12(b)(3).

Additionally, the Defendant moves to dismiss this matter on the grounds of violation of the Due Process Rights arising out of Outrageous Government Conduct.

In support of this motion, defendant asserts the following facts and law.

**ARGUMENT**

Here, the defendant hereby contends that the government manufactured jurisdiction, and contends that there are grounds for dismissal for want of jurisdiction. United States v. Coates, 949 F.2d 104, 105-06 (4th Cir. 1991). Additionally, Mr. Marenghi has standing to assert the outrageous government conduct defense regarding count one on grounds of outrageous government conduct.

Here, jurisdiction in this matter was solely founded on the government having the defendant travel out of state. Which is the reason that Mr. Marenghi was indicted, therefore the defense is available. The defendant was subject to and is a victim of government conduct giving rise to the claim. During the course of investigation the government actions were so outrageous that they violated the due process principles, absolutely barring the government from invoking judicial process to obtain a conviction.

## WANT OF JURISDICTION

Here, the undercover agent manufactured jurisdiction by convincing the Defendant to meet the UC out of state **(District of Massachusetts)** in New Hampshire so that the federal government can obtain jurisdiction over this matter, knowing that if the defendant had met the UC in the District of Massachusetts where the defendant resides there would not have been any federal jurisdiction over this matter, due to Mr. Marenghi not effecting interstate commerce.

Governmental "investigation" involving participation in activities that result in injury to the rights of its citizens is a course that courts should be extremely reluctant to sanction. Prosecutors and their agents naturally tend to assign great weight to the societal interest in apprehending and convicting criminals; the danger is that they will assign too little to the rights of citizens to be free from government-induced criminality. United States v. Archer, 486 F.2d 670, 677 (2d Cir. 1973)

Simply put, Mr. Marenghi was pre-targeted by the FBI, the confidential source was instructed by the FBI to contact the defendant and provide him with a number to negotiate business regarding murder for hire, the Defendant was clearly targeted by the Government in order to manufacture jurisdiction. The government agent instructed and provided Mr. Marenghi with a meeting location in New Hampshire to obtain and manufacture jurisdiction to establish a violation of 18 U.S.C. 1958(a), further instigating the crime charged, sowing the seed of the conspiracy to lure the Defendant to commit the crime. See Greene v. United States, 454 F.2d 783 (9th Cir. 1971).

However, the acts of the agent and the informant served to create this crime charged here today, because the crime charged is directly, or indirectly derives from the governments' misconduct. Had the defendant not been instructed to travel out of state the government would not have obtained jurisdiction over this matter. Federal jurisdiction in criminal prosecutions should not be recognized when patently contrived by means adopted solely for the purpose of creating a federal crime. Federal courts are under an obligation to scrutinize the government's apparent reasons for its actions whenever such a jurisdictional ploy is suggested. United States v. Coates, 949 F.2d 104 (4th Cir. 1991).

Under our federal system, the states possess primary authority for defining and enforcing criminal law. Thus, when Congress criminalizes conduct already denounced as criminal by the States, it effects a change in the sensitive relation between federal and state criminal jurisdiction. United States v. Paredes, 950 F. Supp. 584 (S.D.N.Y. 1996).

## OUTRAGEOUS GOVERNMENT CONDUCT

Here, Mr. Marenghi relies largely on United States v. Archer, 486 F.2d 670 (2d Cir. 1973), in which the Second Circuit reversed convictions under the Travel Act, 18 U.S.C. 1952, because evidence showed that a federal agent had crossed state lines to place a telephone call to one of the defendants "for the precise purpose of transforming a local bribery offense into a federal crime." Id. at 681;

In limited circumstances, courts may dismiss criminal charges in response to outrageous government misconduct: In rare and extreme circumstances, a federal court has the authority to dismiss criminal charges as a sanction for government misconduct. But the law frowns on the exoneration of a defendant for reasons unrelated to his guilt or innocence, and, accordingly, the power to dismiss charges based solely on government misconduct must be used sparingly. It follows that the outrageous government misconduct doctrine is reserved for the most appalling and egregious situations. At the very least, the defendant must show that the challenged conduct violates commonly accepted norms of fundamental fairness and is shocking to the universal sense of justice. While the doctrine is often invoked by criminal defendants, it has never yet been successful in the First Circuit. Dismissal may be proper, however, where the government's misconduct is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction. Generally speaking, an outrageous misconduct defense can prosper only if a defendant's due process rights have been violated. United States v. Djokich, 693 F.3d 37 (1st Cir. 2012).

Thus, when Mr. Marenghi was targeted and contacted by the government informants in this situation the government managed to introduce a federal element into a non-federal crime manufacturing jurisdiction. See also United States v. Coates, 949 F.2d 104, 105-06 (4th Cir. 1991) (dismissing an indictment where jurisdiction was founded solely on one interstate phone call placed by a federal agent with no affirmative link between the federal element and the defendant's actions); United States v. Brantley, 777 F.2d 159, 163 (4th Cir. 1985) (finding that manufactured jurisdiction occurred in a gambling case where the only interstate activity was the FBI's act of moving gambling machines across state lines to establish the gambling front).

Here, while the government first proposed that the meeting between the Defendant and UC in Portsmouth, New Hampshire, Mr. Marenghi readily accepted that invitation and twice traveled from Boston to Portsmouth in furtherance of the conspiracy, in which the FBI secretly intended to frustrate. Evidence was insufficient to convict defendant of murder for hire, where his only coconspirators were government agents, since there can be no indictable conspiracy with government informer who secretly intends to frustrate conspiracy. United States v. Anderson, 989 F.2d 310, 93 Cal. Daily Op. Service 2109, 93 D.A.R. 3739 (9th Cir. 1993). There can be no

3

indictable conspiracy with a government informer who secretly intends to frustrate the conspiracy. Allowing a government agent to form a conspiracy with only one other party creates the potential for law enforcement officers to manufacture conspiracies when none would exist absent the government's presence. See generally United States v. Ritter, 989 F.2d 318 (9th Cir. 1993).

Ritter, 989 F.2d 318, 321 (9th Cir. 1993) (reversing convictions for conspiracy to commit murder-for-hire for two defendants: the first did not know anyone was paid to commit the murder; the second also lacked the required intent because the government agent pretending to be a hit man said he would not charge anything for the murder). Furthermore, the UC posed as a hit man suggesting and insisting that the Defendant murder his wife in order to ruse the defendant and establish criminal charges against Mr. Marenghi.

Respectfully submitted,
Massimo Marenghi, Pro' Se                                                      Date: August 25, 2021

*[signature]*

## Certificate of Service

I Massimo Marenghi hereby certify that this document filed through the U.S. mail to the registered participants as identified on the notice of filing and paper copies will be sent to those indicated as non-registered participants on August 25, 2021